UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESSIE DUNN,<br><br>    Plaintiff<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. 15-cv-07123-GJS<br><br>**ORDER AFFIRMING DECISION OF ADMINISTRATIVE LAW JUDGE** |

**INTRODUCTION**

In this social security disability benefits case, the administrative law judge ("ALJ") conducted a hearing at which plaintiff Essie Dunn ("Plaintiff") was represented by counsel. ALJ Alexander Weir specifically inquired of counsel whether he had reviewed the medical records on file, and whether there was "anything else to submit in evidence." [Administrative Record ("AR") 32.] Counsel responded that he "believed there was evidence out there that we've yet to acquire we think should be submitted." [*Id.*] The ALJ delved further, asking specifically what evidence counsel wanted to submit. Counsel informed the ALJ that he intended to submit progress notes from a treating physician, Dr. Cynthia Washington, who had provided a mental health assessment form that was,

essentially, a check-box form finding Plaintiff disabled. [AR 33.] According to Plaintiff's counsel at the hearing, this was evidence that counsel was "confident" the ALJ would want to consider. [*Id.*] Based on these representations, the ALJ held the record open for one week for the submission of further evidence. [*Id.*]

Counsel failed to provide the promised records within the one-week period. Nor did counsel request additional time from the ALJ to submit the additional evidence. Nor did he provide the records in the approximately one-month period between the hearing and issuance of the ALJ's decision. Nor did counsel provide these allegedly critical records to the Social Security Appeals Council. Nor did counsel seek to provide these records to this Court, even though nearly two years have passed since the hearing. Despite counsel's repeated failures, Plaintiff – represented by an attorney from the same firm that represented Plaintiff at the hearing – now accuses the *ALJ* of failing to fully develop the record to support her claim of disability, because without any records to support Dr. Washington's check-box opinion, the ALJ discounted it, which Plaintiff contends is error.

Plaintiff also asserts that the ALJ improperly failed to take the opinion of consulting physician Dr. Levin into account when crafting Plaintiff's Residual Functional Capacity ("RFC").

As explained below, the Court finds that neither of Plaintiff's arguments has merit. The ALJ met his obligation to fully develop the record; permissibly rejected the opinion of Dr. Washington; and fully considered and relied on the opinion of Dr. Larisa Levin. The Court therefore affirms the decision of the ALJ denying benefits.

## PROCEDURAL HISTORY

On March 3, 2013, Plaintiff applied for both disability insurance benefits ("DIB") and supplemental security income ("SSI"), alleging disability since September 3, 2012, due to bipolar disorder, post-traumatic stress disorder, and alcohol abuse in remission. [AR 10, 13.] After initial denials, ALJ Alexander Weir, III, held a hearing on June 30, 2014. On August 1, 2014, the ALJ issued an

unfavorable decision. The Appeals Council denied review on July 14, 2015, and Plaintiff thereafter commenced the present action on September 9, 2015. The parties consented to proceed before the undersigned Magistrate Judge. The parties completed briefing and the case is ready for decision.

**FACTUAL BACKGROUND**

As the parties are familiar with the record, the Court discusses only those facts relevant to the issues presented in this action.

**1. The Opinion Of Dr. Washington And Lack Of Supporting Records**

The record contains, and the ALJ discussed, the medical source opinions of three physicians: allegedly treating physician Dr. Washington; consultative examiner Dr. Levin; and psychological reviewer Dr. Garland. [AR 18-19.] Dr. Washington completed a "function report" sent to her by Plaintiff's counsel. [AR 339-40.] The two-page report signed by Dr. Washington is what is often referred to as a "check box" form, in which the medical source can check one of five levels of function (from "Unlimited or Very Good" to "No useful ability to function") for each of a number of subcategories under the heading "Mental Abilities And Aptitudes Needed To Do Unskilled Work." [AR 339.] Dr. Washington checked that Plaintiff was "Unable to Meet Competitive Standards" in six subcategories and had "No useful ability to function" in two subcategories. Dr. Washington also found Plaintiff "Unable to Meet Competitive Standards" in additional subcategories related to semiskilled and skilled work and for particular types of jobs. In essence, Dr. Washington opined that Plaintiff is completely disabled.

The form also has space for comments, and asks the physician how many days per month he or she anticipates the patient's impairments will cause the patient to miss work. Dr. Washington checked the highest amount of days – "more than four per month." In the comments, Dr. Washington noted that Plaintiff has periods of "severe depression, anxiety and psyanosis," heard voices that "interfere with concentration" and "frequently decompensates." However, the form contained no

3

actual medical diagnosis, and did not refer to any particular episodes or any previous treatment. There were no other records from Dr. Washington – no treatment history at all – and no other medical source opinions to support Dr. Washington's conclusions.

As noted earlier, while Plaintiff's counsel was "confident" that Dr. Washington's treatment notes would support her check-box opinion – and he stated that he was seeking to obtain these records [AR 33)] – nothing further from Dr. Washington was ever tendered.

In his opinion, the ALJ set forth Dr. Washington's opinion in detail [AR 18], but gave it "limited weight" because the "questionnaire is not supported by any record of treatment," "does not make a diagnosis of a mental impairment," and, in addition, is "inconsistent with the assessment" of Dr. Levin and the opinion of Dr. Garland. [AR 19.]

**2. The Opinion Of Consultative Examiner Dr. Levin**

In August 2013, Plaintiff was evaluated by Dr. Larisa Levin, a board certified psychiatrist and neurologist. Dr. Levin diagnosed Plaintiff with Bipolar Affective Disorder, chronic Post Traumatic Stress Disorder, and Alcohol Abuse in full sustained remission. She found that Plaintiff's Psychosocial Stressors were "Moderate to Severe," and that her global assessment function scale was 47. [AR 18, citing AR 250-56.] The ALJ further described Dr. Levin's evaluation as follows:

> Dr. Levin opined claimant is mildly impaired in her ability to do detailed and complex instructions; moderately limited in her ability to relate and interact with supervisors, coworkers and the public; moderately limited [sic] ability to maintain concentration and attention, persistence and pace; moderately limited in her ability to associate day to day work activity, including attendance and safety; moderately limited in her ability to adapt to the stresses common to a normal work environment; moderately limited in her ability to maintain regular attendance workplace [sic] and perform work activities on a consistent basis; and moderately limited in her ability to perform work activities without special additional supervision.

[AR 18 (citing AR 255).]

### 3. The ALJ's Determination Of Plaintiff's RFC

Based on the totality of the evidence considered, the ALJ found that Plaintiff had the severe mental impairments of mental depression and post-traumatic stress disorder and substance abuse which could cause "some significant limitations on the claimant's basic work abilities" and "moderate limitations" on her ability to maintain concentration, persistence and pace. He also noted that the medical records did not show that Plaintiff's impairments had caused any decompensation episodes of extended duration. [AR 15.] The ALJ determined that Plaintiff had the residual functional capacity for: "work without any physical limitations, but with moderate limitation in her mental abilities. She is precluded from performing detailed or complex tasks. She can deal appropriately with co-workers, supervisors and the general public occasionally. She would have between a 5 and 10% loss of concentration throughout the workday." [AR 18.]

## GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L.Ed.2d 842 (1971) (citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074. Whether an ALJ satisfies his duty to develop the record is an issue of legal error. *See Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 929 (9th Cir. 2014).

## DISCUSSION

**1. The ALJ Complied With His Duties And Did Not Err In Discounting The Check-Box Opinion Of Dr. Washington**

It is unquestionable that Plaintiff cannot "be considered to be under a disability

unless [s]he furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5); *see* 20 C.F.R. § 404.1512(a)&(c). Put another way, she bore the "duty to prove that she was disabled." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). Although the burden is on the claimant to show she is disabled, the Commissioner shares the burden of developing the record evidence. "In Social Security cases, the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)).

Nonetheless, the ALJ is not a roving investigator; his duty to "to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes,* 276 F.3d at 459-60 (emphasis added); *see Webb*, 433 F.3d at 683 (explaining that the duty to enlarge the record only arises if the evidence is ambiguous, the ALJ finds that the record is inadequate, or the ALJ relies on an expert's conclusion that the evidence is ambiguous). "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, ***or keeping the record open after the hearing to allow supplementation of the record***." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (emphasis added) (citing *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir.1998)).

Here, the ALJ had sufficient medical records available such that the evidence presented was not ambiguous. But given the statements of counsel that he was seeking progress notes from Dr. Washington that he (counsel) believed would support Plaintiff's claim for benefits, the ALJ held the record open for supplementation. That was all that was required for the ALJ to comply with his duty to fully develop the record. It was Plaintiff's burden, not that of the ALJ, to prove her entitlement to disability. She failed to do so, and, even here, nothing

counsel has provided or pointed to indicates that records properly supporting Dr. Washington's check box opinion even exist.

Given the lack of supporting evidence, Dr. Washington's unexplained, unsupported two-page multiple choice form does not convince this Court that substantial evidence did not support the ALJ's findings. The Ninth Circuit has long held that "the ALJ need not accept a treating physician's opinion which is 'brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986)); *see also Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings." (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004)) (emphasis and citations omitted)). This rule is particularly applicable where, as here, the physician's opinion takes the form of a "yes-or-no" or "check-the-box" list. *Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012) (noting an "ALJ may "permissibly reject[ ] ... check-off reports that [do] not contain any explanation of the bases of their conclusions" (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir.1996)); *e.g.*, *Batson*, 359 F.3d at 1195; *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001).[1]

Because the ALJ could reasonably have rejected Dr. Washington's unsupported opinion, it does not undermine the substantial evidence supporting the ALJ's conclusion.

---

[1] In *Garrison v. Colvin*, the Ninth Circuit stated that where answers to questionnaire "were based on significant experience with [the claimant] and supported by numerous records, … [they] were therefore entitled to weight that an otherwise unsupported and unexplained check-box form would not merit[.]" 759 F.3d 995, 1013 (9th Cir. 2014). The *Garrison* rule does not apply here, however, because the questionnaire answers are not ***supported by numerous records***. Rather, as the Court explained, there are ***no*** records from Dr. Washington.

7

## 2. The ALJ Took The Opinion Of Dr. Levin Into Consideration In Crafting Plaintiff's RFC

Plaintiff's second contention of error is that the ALJ allegedly did not properly consider consultative examiner Dr. Levin's opinion. Plaintiff notes correctly that an ALJ must provide specific and legitimate reasons for rejecting the opinion of an examining doctor when that opinion is contradicted by that of another physician. [Dkt. 17 ("Pltf.'s Reply Br.") at 12.] But, here, the ALJ did not reject Dr. Levin's opinion. He described Dr. Levin's opinion in detail [AR 14], and then relied on it in both rejecting Dr. Washington's opinion [AR 15] and crafting Plaintiff's RFC [AR 18-19] - finding, as did Dr. Levin, that Plaintiff had "moderate" limitations and then incorporating moderate limitations that track Dr. Levin's opinion into the RFC.)

Plaintiff complains that the ALJ did not "*expressly state* whether he accepted or rejected Dr. Levin's opinion" [Pltf.'s Reply Br. at 12] (emphasis added), but cites no authority for the proposition that an ALJ must make an "express" finding when it is clear that he did not take issue with any portion of the opinion and relied on it without criticism. Moreover, the ALJ *did* expressly state that his assessment of Plaintiff's RFC was "consistent with the opinion of consultative examiner, Dr. Levin." [AR 18-19.]

It is solely within the purview of the ALJ to determine a claimant's RFC based on the medical opinions and the totality of the record with which he is presented. 20 C.F.R. § 404.1546(c); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not [a] physician, to determine residual functional capacity"). Here, the ALJ took the "moderate" limitations set forth by Dr. Levin and properly translated them into non-exertional limitations in the RFC. For example, Dr. Levin opined that Plaintiff was moderate in her ability to interact with supervisors, coworkers, and the public; the ALJ determined that Plaintiff had "moderate limitations in her mental abilities," including that she can "deal appropriately with co-workers, supervisors and the general public *occasionally*."

8

[AR 18] (emphasis added.) Dr. Levin found that Plaintiff had moderate limitations in concentration ability and was "mildly impaired in her ability to do detailed and complex instructions." [*Id.*] The ALJ incorporated this assessment into the RFC by stating that Plaintiff was "precluded from doing detailed or complex work." [*Id.*] Plaintiff's contention that the ALJ did not properly consider Dr. Levin's opinion is thus entirely without merit.

## CONCLUSION

For the reasons stated above, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error. Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, **IT IS ORDERED** that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

**IT IS SO ORDERED.**

DATED: May 27, 2016   _____
                              GAIL J. STANDISH
                              UNITED STATES MAGISTRATE JUDGE